**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| TRAVELERS CASUALTY AND | § | |
| SURETY COMPANY OF AMERICA, | § | |
| *Plaintiff* | § | |
| | § | Case No.  SA-20-CA-01433-XR |
| vs. | § | |
| | § | |
| STEVEN WIBRACHT, ERIN | § | |
| WIBRACHT, | § | |
| *Defendants* | § | |

**ORDER**

On this date, the Court considered Third-Party Plaintiffs' motion for summary judgment (ECF No. 85), Third-Party Defendants' response (ECF No. 92), and Third-Party Plaintiffs' reply (ECF No. 93). After careful consideration, Third-Party Plaintiffs' motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**.

**BACKGROUND**

Third-Party Plaintiffs, Steven Wibracht and Erin Wibracht (collectively, "Third-Party Plaintiffs" or "the Wibrachts"), assert that Third-Party Defendants, Michael Padron, WPS Group, LLC, and Mapco, Inc. (collectively, "Third-Party Defendants"), breached a Comprehensive Agreement and Stock Purchase Agreement by failing to indemnify them in connection with Third-Party Plaintiffs' personal guaranties of payment and performance bonds issued by an insurance company, Travelers Casualty and Surety Company of America ("Travelers").

On March 17, 2015, Plaintiff Travelers filed suit against numerous defendants, including the Wibrachts, in the Western District of Texas for breach of an indemnification agreement. *See Travelers Casualty and Surety Company of America v. Padron et al.,* 5:15-cv-00200-RCL, ECF

1

No. 1. In that suit, Travelers issued performance, payment, and surety bonds beginning in 2008 for construction projects undertaken by several firms. ECF No. 339 at 3.  In exchange for the bonds, the Wibrachts executed an Additional Indemnity Rider on April 10, 2013, binding them to the terms of a September 16, 2008 General Indemnity Agreement. ECF No. 1 at 9. The Wibrachts and several other parties thereby became indemnitors of Travelers, with joint and several liability, in the event of any loss incurred by Travelers in connection with any bonds issued. ECF No. 339 at 3. After Travelers received claims under certain bonds and the indemnitors failed to satisfy Travelers' numerous demands for indemnification, Travelers filed suit against their indemnitors. *See* ECF No. 1.

On September 30, 2017, the Wibrachts filed a voluntary petition for bankruptcy relief pursuant to Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court, Western District of Texas. *See* ECF No. 221. This bankruptcy petition stayed proceedings against them. *Id.* Following Steven Wibracht voluntarily waiving a discharge on February 25, 2019 and the bankruptcy court denying Erin Wibracht a discharge on April 5, 2019, Travelers filed the suit at hand on December 17, 2020 against the Wibrachts, again alleging breach of their indemnity agreement. *See* ECF No. 1. Specifically, Travelers alleged that it incurred losses in the amount of approximately $14 million from claims on the bonds and, pursuant to an indemnity agreement, the Wibrachts were obligated to deposit with Travelers an amount sufficient to discharge this loss. *Id.* at 3–5. Travelers asserted that the Wibrachts breached their indemnity agreement by failing to provide demanded collateral in this amount. *Id.* at 5.

On April 25, 2022, the Wibrachts filed the operative Third-Party Complaint against Third-Party Defendants in this matter. ECF No. 47. The Wibrachts assert that they entered into several contracts with Third-Party Defendants in August 2013 as part of a corporate restructuring and

separation of business interests. *Id.* ¶ 42. Specifically, the Wibrachts claim that the following four agreements contained provisions by which the Third-Party Defendants agreed to indemnify them against the types of claims asserted by Travelers: (i) a Comprehensive Agreement, (ii) a Stock Purchase Agreement, (iii) a Membership Interest Purchase Agreement, and (iv) an Employment Termination and Release Agreement. *Id.* ¶¶ 43–50.

On November 2, 2022, Plaintiff Travelers and the Wibrachts submitted a Joint Advisory informing the Court that mediation resulted in a settlement of all claims asserted by Travelers against the Wibrachts. *See* ECF No. 64. The Joint Advisory noted that the claims between Third-Party Plaintiffs and Third-Party Defendants remain pending before the Court. *Id.*

On August 31, 2023, the Wibrachts filed a motion for summary judgment against Third-Party Defendants. ECF No. 85. The Wibrachts assert that they incurred a $60,000 obligation to Travelers to settle the claims brought against them in connection with the bonds, as well as $35,258.50 in attorneys' fees and expenses incurred in defending against Traveler's claims in this litigation. *Id.* at 3–4. The Wibrachts assert that the Comprehensive Agreement and Stock Purchase Agreement contain provisions requiring Third-Party Defendants to indemnify them for this settlement with Travelers.

Specifically, under Part D(iii) of the Comprehensive Agreement dated August 9, 2013, the parties agreed:

> Padron, Taylor, FMS and Mapco shall use commercially reasonable efforts to promptly secure the release the MWibracht, SWibracht and Jenkins (the "Released Parties") from their personal guarantees of any insurance or surety bonds written through the date of this Agreement of FMS, MAPCO, or any clients of FMS or MAPCO. FMS and Mapco hereby release and jointly indemnify the Release Parties, with respect to all liability arising out of the surety obligations to which FMS, Mapco or their affiliates are parties.

ECF No. 85-1 at 8. The Wibrachts claim that Third-Party Defendants breached this agreement by (i) their failure to use commercially reasonable efforts to secure their release from personal

guarantees to Travelers and (ii) indemnify them from liability stemming from their obligations to Travelers. ECF No. 85 at 3.

Under Section 6.1 of the Stock Purchase Agreement dated August 26, 2013, the parties agreed:

> [Mapco] hereby agrees to and does release and indemnify and hold harmless M. Wibracht, S. Wibracht, Jenkins and their respective affiliates, agents, representatives, heirs (each an "Indemnified Person") from and against any all losses, claims, damages, liabilities and expenses to which any Indemnified Person may become subject (i) as a result of or arising out of M. Wibracht's, S. Wibracht's or Jenkins's ownership, employment or any other relationship with [Mapco], known or unknown, which existed prior to the Effective Date, (ii) arising on or after the Effective Date, out of or in connection with [Mapco] or PEI or the business of [Mapco] including, without limitation any surety losses, or (iii) arising at any time, before or after the Effective Date, out of or with respect to any surety losses of [Mapco], surety obligations of [Mapco] or any debt owing by [Mapco], including without limitation the existing BBVA Compass line of credit account number 10378391 and any credit card debt of [Mapco], or any claim, litigation, investigation or proceeding (any of the foregoing a "Proceeding") relating to any of the foregoing, regardless of whether any such Indemnified Person is a party thereto or whether a Proceeding is brought by a third party or by [Mapco] or any of its affiliates, and to reimburse such Indemnified Person upon demand for any legal or other out of pocket expenses incurred in connection with investigating or defending any of the foregoing.

ECF No. 85-1 at 31. In a declaration, Steven Wibracht explains that this indemnification clause applies to him because he partially owned and worked for Mapco, as well as because Mapco also "provided a guaranty of each of the bonds." ECF No. 85-1 ¶ 1.

In their motion for summary judgment, Third-Party Plaintiffs seek (i) $95,258.50 for their losses covered by the indemnity agreements in question, which includes $60,000 to settle the claims brought by Travelers and $35,258.50 in attorneys' fees; (ii) costs of court; (iii) post-judgment interest; (iv) an Order dismissing Third-Party Defendants' affirmative defenses; and (v) attorney's fees incurred in prosecuting their claims herein.

ECF No. 85 at 15. On October 30, 2023, Third-Party Defendants filed their response (ECF No. 92), and Third-Party Plaintiffs filed their reply on November 5, 2023 (ECF No. 93).

## LEGAL STANDARD

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56. To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the non-moving party's claim or defense, or, if the crucial issue is one for which the nonmoving party will bear the burden of proof at trial, merely point out that the evidence in the record is insufficient to support an essential element of the nonmovant's claim or defense. *Little v. Liquid Air Corp.*, 952 F.2d 841, 847 (5th Cir. 1992), *on reh'g en* banc, 37 F.3d 1069 (5th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *See Fields v. City of S. Hous.*, 922 F.2d 1183, 1187 (5th Cir. 1991). Any "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Rather, the nonmovant must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). The Court will not assume "in the absence of any proof . . . that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of

the nonmovant." *Little*, 37 F.3d at 1075.

For a court to conclude that there are no genuine issues of material fact, the court must be satisfied that no reasonable trier of fact could have found for the nonmovant, or, in other words, that the evidence favoring the nonmovant is insufficient to enable a reasonable jury to return a verdict for the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In making this determination, the court should review all the evidence in the record, giving credence to the evidence favoring the nonmovant as well as the "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000). The Court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment, *id.* at 150, and must review all facts in the light most favorable to the nonmoving party. *First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 181 (5th Cir. 2009).

## ANALYSIS

### I.     Third-Party Plaintiffs' Objections to Third-Party Defendants' Exhibits

The Court will first address Third-Party Plaintiffs' evidentiary objections to Third-Party Defendants' evidence.

The Fifth Circuit applies a flexible approach when considering summary judgment evidence, holding "[a]t the summary judgment stage, materials cited to support or dispute a fact need only be *capable* of being 'presented in a form that would be admissible in evidence.'" *LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir. 2016) (quoting Fed. R. Civ. P. 56(c)(2); *see also Lee v. Offshore Logistical & Transp., L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017) ("Although the substance or content of the evidence submitted to support or dispute a fact on summary judgment must be admissible . . . the material may be presented in a form that would not, in itself, be admissible at trial.") (quoting 11 Moore's Federal Practice - Civil ¶ 56.91 (2017)).

Thus, the Court considers whether Third-Party Defendants could present the evidence submitted in support of its motion for summary judgment in an admissible form, regardless of whether it was submitted in that form for purposes of the motion.

Third-Party Plaintiffs assert that all Third-Party Defendants' exhibits "cannot be presented in a form that would be admissible in evidence." ECF No. 92 at 2. The Court disagrees. Third-Party Defendants submit three "Mapco, Inc. and subsidiary reviewed consolidated financial statements" (ECF No. 92-1, Ex. A; 92-2, Ex. B; and 93-3, Ex. C); an email regarding Third-Party Plaintiff Steven Wibracht's corporate title (ECF No. 92-4, Ex. D); and a link to a video recording of Third-Party Defendant James Taylor's deposition (ECF No. 92-5, Ex. E).[1]

First, with proper certification of a custodian, the Mapco financial statements could be admissible under the business records exception to the hearsay rule. *See Deutsche Bank A.G. London Branch v. WorldCom, Inc. (In re WorldCom, Inc.),* 357 B.R. 223, 229 (S.D.N.Y. 2006) (noting that a restated balance sheet is admissible as a business record).

Second, the content of the email submitted as Exhibit D could be admissible by calling its sender to testify at trial. *Weathered v. Fam. Dollar Stores of Tex. LLC*, No. 3:22-cv-2409-K-BN, 2023 WL 8628929, at *4 (N.D. Tex. Nov. 27, 2023) (considering an email competent summary judgment evidence because the "most obvious way that hearsay testimony can be reduced to admissible form is to have the hearsay declarant testify directly to the matter at trial") (citations omitted). Although Third-Party Defendants provided this email without an accompanying affidavit, courts "have held emails are authenticated under Rule 901(b)(4) when they include the sender's name, the recipient, the date, and the subject." *Id.* at *4 (citations omitted). Third-Party Defendants' submitted email exhibit has such identifying features. *See* ECF No. 92-4 at 2.

---

[1] Third-Party Plaintiffs also assert that these exhibits contain "hearsay," but fail to identify any for the Court.

Finally, courts have repeatedly held that it is proper to consider deposition testimony as competent evidence at the summary judgment stage. *See Kelley v. Price-Macemon, Inc*., 992 F.2d 1408, 1415 n.12 (5th Cir. 1993) ("It is well-settled that a certified transcript of a judicial proceeding may be considered on a motion for summary judgment"); *State Farm Lloyds v. Jones*, No. 4:05-cv-389, 2006 WL 2589059, at *2 (E.D. Tex. Sept. 6, 2006) ("The court is not precluded from considering transcripts of deposition testimony or prior trial testimony to determine whether summary judgment is proper.").

For the foregoing reasons, the Court overrules each of Third-Party Plaintiffs' objections.

## II.    Third-Party Plaintiffs' Motion for Summary Judgment

### A.  Breach of Comprehensive Agreement (Count One) and Breach of Stock Purchase Agreement (Count Two)

The Court applies Texas law to the instant case as it involves a breach of contract dispute based on diversity jurisdiction. *See Petrohawk Props., L.P. v. Chesapeake La., L.P.*, 689 F.3d 380, 387 (5th Cir. 2012) ("When jurisdiction is based on diversity, we apply the substantive law of the forum state.")  Under the Texas law of indemnification, Third-Party Plaintiffs must demonstrate five elements to enforce the indemnity agreements: (1) a contractual indemnity agreement exists; (2) the agreement obligated Third-Party Defendants to indemnify the Wibrachts in the event claims were made on the bonds issued by Travelers; (3) those claims were made; (4) all conditions precedent for recovery have occurred or been waived or excused; and (5) the Wibrachts have been damaged. *See Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 719 (5th Cir. 1995).

For the reasons discussed below, the Court finds that Third-Party Plaintiffs have presented undisputed evidence for each element—and thus have proven liability against Third-Party Defendants as a matter of law—with respect to Steven Wibracht's breach of indemnity agreements

claims, but not with respect to Erin Wibracht's claims.  Accordingly, Third-Party Plaintiff Steven Wibracht is entitled to summary judgment on his indemnification claims, but Erin Wibracht is not.

### 1.   A Valid Indemnity Agreement Exists

Third-Party Plaintiffs satisfy the first element of a contractual indemnity claim by identifying the Comprehensive Agreement and Stock Purchase Agreement entered into on or about August 9, 2013 (collectively, the "Indemnity Agreements"). To be enforceable, the Indemnity Agreements' "express language must hold the indemnitors liable to the surety." *Liberty Mut. Ins. Co. v. Ricehouse*, No. 4:21-CV-689-SDJ, 2023 WL 1481341, at *3 (E.D. Tex. Feb. 1, 2023).

The Comprehensive Agreement satisfies this requirement as the indemnity language obligates Third-Party Defendants to "release and jointly indemnify the Release Parties, with respect to all liability arising out of the surety obligations to which FMS, Mapco or their affiliates are parties." ECF 85-1 at 8. Likewise, the Stock Purchase Agreement provides that Mapco "does release and indemnify and hold harmless M. Wibracht, S. Wibracht, Jenkins…from and against any and all losses, claims, damages, liabilities, and expenses…":

> (i)    as a result of or arising out of M. Wibracht's, S. Wibracht's, or Jenkin's ownership, employment or any other relationship with [Mapco], known or unknown, which existed prior to the Effective Date;
>
> (ii)   arising, on or after the Effective date, out of or in connection with [Mapco] and PEI or the business of [Mapco] including without limitation any surety losses; or
>
> (iii)  arising at any time, before or after the Effective Date, out of or with respect to any losses of [Mapco], surety obligations of [Mapco] or any debt owing by [Mapco].

ECF No. 85-1 at 31.  This agreement also indemnifies Steven Wibracht for any "claim, litigation, investigation or proceeding" arising out of the foregoing. *Id.*

However, Third-Party Plaintiffs fail to present the Court with any evidence indicating that Erin Wibracht was a party to the Indemnity Agreements.  The Comprehensive Agreement defines

"Released Parties" as "MWibracht, SWibracht and Jenkins."  ECF No. 85-1 at 8. The Stock Purchase Agreement only lists the following parties as "Indemnified Person[s]": "M. Wibracht, S. Wibracht, Jenkins, and their respective affiliates, agents, representatives and heirs." ECF No. 85-1 at 31. Neither agreement specifically identifies Erin Wibracht as an indemnified party, and Third-Party Plaintiffs point the Court to no evidence indicating Erin Wibracht was considered an affiliate, agent, or representative of Steven Wibracht under the Stock Purchase Agreement.

Accordingly, Third-Party Plaintiffs have presented the Court with uncontested evidence that Steven Wibracht has a valid and enforceable indemnity agreement with Third-Party Defendants, but not that Erin Wibracht has any such contract. Having reached this determination, the Court considers the evidence put forward for the other elements only with respect to Steven Wibracht.

### 2.   The Indemnity Agreements Require Third-Party Defendants to Indemnify Third-Party Plaintiff Steven Wibracht

Turning to the second requirement, Third-Party Plaintiffs have demonstrated that the Indemnity Agreements obligate Third-Party Defendants to indemnify Steven Wibracht for the claims made against him by Travelers in connection with the performance and payment bonds issued to a group of companies controlled by Third-Party Defendants.

Under Texas law, courts look to the plain language of a contract to construe the parties' intent. *N. Shore Energy, L.L.C. v. Harkins*, 501 S.W.3d 598, 602 (Tex. 2016). If that language has a "certain or definite meaning," no further inquiry is necessary. *Plains Expl. & Prod. Co. v. Torch Energy Advisors Inc.*, 473 S.W.3d 296, 305 (Tex. 2015). Here, the Comprehensive Agreement contains language indemnifying Steven Wibracht from "all liability arising out of the surety obligations to which FMS, Mapco or their affiliates are parties." ECF 85-1 at 8. The Stock Purchase Agreement also has broad indemnity protections, including related to any "claim,

litigation, investigation or proceeding," stemming from any losses arising out of Steven Wibracht's

"ownership, employment, or other relationship" with Third-Party Defendant Mapco.  ECF No. 85-1 at 31.

According to Steven Wibracht's declaration, the losses incurred from litigation with Travelers that he is seeking to recover stem from the personal guarantees he was required to make to Travelers "on account of my partial ownership of, work for, and relationship with Mapco." ECF No. 85-1 at 1. Such guarantees were necessary to secure the performance and payment bonds issued to a group of companies controlled by Mapco and the other Third-Party Defendants. *Id.*

Third-Party Defendants fail to put forward any evidence or interpretations of the Indemnity Agreements that could lead the Court to an alternative conclusion. Thus, Third-Party Plaintiff Steven Wibracht has established that the Indemnity Agreements require Third-Party Defendants to indemnify him for settlements of claims with Travelers related to the bonds.

### 3.   Claims Were Made Against the Bonds

The parties do not dispute that Travelers made claims against Third-Party Plaintiffs for losses that Travelers incurred as a result of issuing the bonds. *See* ECF No. 1.

### 4.   All Conditions Precedent Occurred

Third-Party Plaintiffs allege that no specific conditions precedent needed to be satisfied under the Indemnity Agreements, and Third-Party Defendants do not dispute this contention. To the extent that the Indemnity Agreements required any notice, Steven Wibracht details in his declaration that the Wibrachts sent four letters dated January 26, 2015 to the Third-Party Defendants demanding that they honor the Indemnity Agreements. ECF No. 85-1 at 3–4. Third-Party Defendants acknowledge receipt of these letters in their Ordinal Answer. ECF No. 32 ¶ 31. In November 2022, the Wibrachts made an additional request that Third-Party Defendants comply

with the Indemnity Agreements by indemnifying them for their $60,000 settlement with Travelers. ECF No. 85-1 at 4.

Third-Party Plaintiffs thereby demonstrate that there is no material fact issue with respect to this element. *Associated Indem. Corp. v. CAT Contracting, Inc*., 964 S.W.2d 276, 283 (Tex. 1998) ("A party seeking to recover under a contract bears the burden of proving that all conditions precedent have been satisfied.").

### 5.  Third-Party Plaintiff Steven Wibracht Has Been Damaged

Finally, Steven Wibracht establishes that he suffered damages by including the Wibrachts' Settlement Agreement with Travelers, substantiating that the Wibrachts were forced to pay $60,000 to Travelers to resolve litigation stemming from claims made on the bonds issued by Travelers. *See* ECF No. 85-1 at 102. Third-Party Plaintiffs also provide a declaration from their attorney, affirming the attorney's fees and expenses in the amount of $35,258.50 accrued in this litigation.  ECF No. 85-1 at 3.

Third-Party Plaintiff Steven Wibracht has thereby demonstrated that no material fact issues exist with respect to his Breach of Indemnity Agreements claims (Counts One and Two).

### B.  Breach of Membership Interest Purchase Agreement (Count III) and Employment Termination and Release Agreement (Count IV)

In the Amended Third-Party Complaint, Third-Party Plaintiffs also assert breach of indemnity agreement counts with respect to i) a Membership Interest Purchase Agreement (Count Three) and ii) Employment Termination and Release Agreement (Count Four). ECF No. 47 ¶¶ 47–50. But Third-Party Plaintiffs make no reference to these agreements in their motion for summary judgment, nor do they even provide the Court with copies of these agreements. Accordingly, the Court cannot grant Third-Party Plaintiffs relief on these claims. *Normore v. Dall. Indep. Sch. Dist.*, No. 3:18-CV-02506-E, 2023 WL 3937785, at *7 (N.D. Tex. June 9, 2023) (noting that at the

summary judgment stage, the "moving party bears the initial burden of showing the court there is no genuine issue for trial").

### C.  Breach of Contract (Count V)

Third-Party Plaintiffs contend that Third-Party Defendants breached the Comprehensive Agreement's requirement that Third-Party Defendants "shall use commercially reasonable efforts to promptly secure the release of MWibracht, SWibracht and Jenkins (the "Released Parties") from their personal guarantees of any insurance or surety bonds written through the date of this Agreement of FMS, MAPCO, or any clients of FMS or MAPCO." ECF No. 85-1 at 8.

In Texas, a claim for breach of contract requires, "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Mullins v. TestAmerica, Inc*., 564 F.3d 386, 418 (5th Cir. 2009) (quoting *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App.— Houston [14th Dist.] 2005, pet. denied)). Third-Party Defendants offer no evidence disputing that the Comprehensive Agreement constituted a valid contract under which Third-Party Plaintiffs fulfilled their obligations. Further, in his declaration, Steven Wibracht affirms that any dispute concerning failure of consideration or failure of performance under the Indemnity Agreements was resolved via a settlement agreement—attached to his declaration—in a related state court litigation. *See* ECF No. 85-1 at 2, 41.

To establish that a breach occurred, Third-Party Plaintiffs point the Court to the settlement agreement entered into by Third-Party Defendants and Travelers in the earlier federal litigation, *Travelers Casualty and Surety Company of America v. Padron et al.,* 5:15-cv-00200-RCL. *See* ECF No. 85-1 at 80. To resolve this matter and compensate Travelers for the losses incurred from claims under certain bonds issued, Third-Party Defendants Mapco, Inc. and Michael Padron agreed

to pay Travelers $4.2 million. ECF No. 85-1 at 86. As detailed in Steven Wibracht's declaration, Third-Party Plaintiffs assert that while this settlement agreement resolved Travelers' claims against multiple parties, Third-Party Defendants failed to secure a similar release of Travelers' claims against Third-Party Plaintiffs. As a consequence of this breach, Third-Party Plaintiffs were forced to pay $60,000 to Travelers to settle their claims separately, as well as attorney's fees and expenses in the amount of $35,258.50.  ECF No. 85-1 at 3.

Again, Third-Party Plaintiffs have not provided the Court with any evidence that Erin Wibracht was a party to the Comprehensive Agreement. However, the Court finds that there is no material fact issue with respect to Steven Wibracht's breach of contract claim and grants summary judgment on this claim for him.

### III.    Third-Party Defendants' Affirmative Defense of Fraudulent Inducement

Third-Party Defendants do not challenge Third-Party Plaintiffs' allegations concerning their indemnity agreement and breach of contract claims. Rather, Third-Party Defendants contend that their affirmative defense of fraudulent inducement precludes Third-Party Plaintiffs from recovering under their breach of Indemnity Agreement claims. Under such circumstances, when "a nonmovant solely counters a motion for summary judgment with an affirmative defense, the movant should be able to obtain summary judgment simply by disproving the existence of any essential element of the [nonmovant's] affirmative defense." *MTGLQ Investors, L.P. v. Alexander*, No. 20-20528, 2021 WL 3921418 at *3 (5th Cir. Sept. 1, 2021). Third-Party Plaintiffs do so here.

To state a claim for fraudulent inducement under Texas law, "a plaintiff must prove the basic elements of fraud: (1) a material misrepresentation; (2) that is false; (3) when the defendant made the representation, the defendant knew it was false or made the statement without any knowledge of its truth; (4) the defendant intended the plaintiff to rely on the representation, and

14

the plaintiff actually relied on the representation; and (5) the defendant's actions caused an injury." *Kevin M. Ehringer Enters. v. McData Servs. Corp.*, 646 F.3d 321, 325 (5th Cir. 2011). Fraudulent inducement also requires "proof of an underlying contract which was induced." *Id.*

In support of this affirmative defense, Third-Party Defendants point the Court to "Consolidated Balance Sheets of Mapco, Inc. and its subsidiaries," which purport to demonstrate rapidly shifting corporate liabilities between June 30, 2011 and December 31, 2012. ECF No. 92 at 4; ECF Nos. 92-1, 92-2, and 92-3. Third-Party Defendants also identify an email dated June 13, 2013, stating "Steven Wibracht is head of the Accounting Department." ECF No. 92-4 at 2. But Third-Party Defendants do not present any evidence that the financial records in the consolidated balance sheets were inaccurate, and, even assuming they were, Third-Party Defendants do not explain Steven Wibracht's role in creating these documents, apart from identifying him as the head of accounting.

In Third-Party Defendant James Taylor's video deposition, Taylor testified that it was his understanding, based on representations from Steven Wibracht and Michael Wibracht, that Mapco's corporate deficits were around $1.6 million. ECF No. 92-5 at 2 (31:28-33:05).[2] He also stated that upon conducting his own financial audit, he discovered that the corporate deficits were closer to around $5 million. *Id.* Taylor concluded that he would not have signed the Indemnity Agreements if he had an accurate understanding of Mapco's finances. *Id.*

Parties asserting fraudulent inducement claims are required to explain "the who, what, where, and how" of the purported fraud with particularity. *Cuevas v. BAC Home Loans Servicing, LP*, No. 4:10–CV–31, 2012 WL 4339063, at *6 (S.D. Tex. Sept. 19, 2012); *Hoffman v. L&M Arts*,

---

[2] Third Party Defendants explain, "[t]he deposition of Brian Taylor did not have a transcript. Rather, it was recorded via Zoom and he was sworn in. The references to the deposition are done by minutes and seconds as seen in the video link." ECF No. 92 at 2.

838 F.3d 568, 576 (5th Cir. 2016) ("A plaintiff alleging a state-law fraudulent inducement claim is subject to Federal Rule of Civil Procedure 9(b)'s heightened pleading standard.") Here, Third-Party Defendants fail to identify any specific false statements made by the Wibrachts, beyond Third-Party Defendant Taylor's testimony that certain unspecified representations made by Steven Wibracht underestimated Mapco's corporate deficits.

Further, under the third element of a fraudulent inducement claim, a party must demonstrate "at the time when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of its truth as a positive assertion." *Cardinal Health Solutions, Inc. v. Valley Baptist Med. Ctr.*, No. 1:07-CV-111, 2009 WL 150942, at *5 (S.D. Tex. Jan. 21, 2009). Again, Third-Party Defendants point to no evidence in the record indicating that Steven Wibracht knew that any of his representations were false or was otherwise reckless in not knowing. Finally, Third-Party Defendants identify no evidence to satisfy the fourth element of fraudulent inducement, requiring Third-Party Plaintiffs to have intended Third-Party Defendants to have relied on any of their misrepresentations.

For these reasons, Third-Party Defendants' affirmative defense of fraudulent inducement fails.

## IV.  Third-Party Plaintiffs' Motion for Summary Judgment on Third-Party Defendants' Affirmative Defenses

Third-Party Plaintiffs argue that they should be granted summary judgment on the following affirmative defenses asserted by Third-Party Defendants:

1. "Failure to Mitigate Damages" because Third-Party Defendants cannot demonstrate that Third-Party Plaintiffs acted unreasonably or undertook actions that aggravated their harm;

2. "Failure of Consideration / Failure to Perform" because Third-Party Defendants cannot establish that Third-Party Plaintiffs failed to perform any of their obligations and have not identified "any supervening cause after the agreements in question were reached resulted in a failure of the promised performance;"

3. "Offset," as the Third-Party Defendants do not plead any facts demonstrating that Third-Party Plaintiffs recovered money from other indemnitors in connection with the relevant bonds; and

4. "Statute of Limitations," as Third-Party Plaintiffs' claims "did not fully accrue until they settled the claims brought by Travelers in November 2022."

ECF No. 85 at 12–14.

In their response, Third-Party Defendants do not challenge Third-Party Plaintiffs' arguments with respect to any of these affirmative defenses. Because Third-Party Defendants have not attempted to offer any evidence in support of these affirmative defenses, the Court will grant Third-Party Plaintiffs' motion for summary judgment with respect to these four affirmative defenses. *See Providence Title Co. v. Truly Title, Inc.*, No. 4:21-CV-147-SDJ, 2022 WL 17979772, at *2 (E.D. Tex. Oct. 5, 2022) (granting plaintiff's motion for summary judgment on affirmative defenses where defendant "has not attempted to prove the aforementioned uncontested affirmative defenses" in its response); *Carnegie Tech., L.L.C. v. Triller, Inc.*, 39 F.4th 288, 293 (5th Cir. 2022) (noting summary judgment appropriate where a "nonmovant pleads an affirmative defense but fails to establish it").

Third-Party Plaintiffs also seek summary judgment with respect to Third-Party Defendants' fraudulent inducement claim. As explained above, because Third-Party Defendants fail to present evidence in support of several elements of this claim, the Court grants Third-Party

Plaintiffs' summary judgment on this claim. *See Castrellon v. Ocwen Loan Servicing, L.L.C.,* 721 Fed. App'x. 346, 349 (5th Cir. 2018) (finding that under Texas law, "[i]f he party opposing a summary judgment relies on an affirmative defense, he must come forward with summary judgment evidence sufficient to raise an issue of fact *on each element* of the defense to avoid summary judgment.") (emphasis added).

## V.   Attorney's Fees

Third-Party Plaintiffs "request an opportunity to present their claim for such attorney's fees and expenses incurred in enforcing Third-Party Defendants' indemnity obligations under the agreements in question (including conditional appellate fees), via a post-judgment motion." ECF No. 85 at 10. The Court rules that Third-Party Plaintiffs may submit briefing as to the appropriateness and amount of attorney's fees requested by **April 5, 2024.** This briefing should also address any other expenses or costs being sought by Third-Party Plaintiffs.

## CONCLUSION

For the foregoing reasons, Third-Party Plaintiffs' motion for summary judgment (ECF No. 85) is **GRANTED IN PART** and **DENIED IN PART**.

With respect to Third-Party Plaintiff Steven Wibracht's claims, the motion is **GRANTED** as to Indemnification Under Comprehensive Agreement (Count I); Indemnification Under Stock Purchase Agreement (Count II); and Breach of Contract (Count V).

Third-Party Plaintiffs' request for additional briefing regarding the appropriateness and amount of attorney's fees is also **GRANTED.** Third-Party Plaintiffs may submit briefing on this matter by **April 5, 2024.** This briefing should also address any other expenses or costs being sought by Third-Party Plaintiffs.

The motion is **DENIED** in all other respects.

It is so **ORDERED**.

**SIGNED** this 11th day of March, 2024.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE